IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

TERRY BENTLEY and SANDRA          :
DILLARD, individually and as      :
Executrices of the Estate of Dorothy :
Bentley, and ELAINE CLEMMER       :
and NANCY BROWN,                  :
                                  :
     Plaintiffs,                 :
                                  :      CIVIL ACTION
v.                                :      NO. 2:05-CV-128-WCO
                                  :
CSX TRANSPORTATION, INC.,         :
                                  :
     Defendant.                  :

## ORDER

The captioned case is before the court for consideration of defendant's motion to dismiss [10-1] pursuant to Federal Rule of Civil Procedure 12(b)(6).

### I.    Factual Background

On October 15, 2004, Dorothy Bentley was driving her vehicle southbound on Athens Street over a railroad grade crossing in Winder, Georgia. (Compl. ¶ 6.) At the same time, defendant's train was traveling westbound toward the same grade crossing. (Id. ¶ 7.) Upon entering the crossing, Ms. Bentley's vehicle was struck by defendant's train. (Id. ¶ 8.) She ultimately died from injuries received in the collision. (Id. ¶ 9.)

Plaintiffs are Ms. Bentley's surviving children and the executrices of her estate. (Id. ¶¶ 1-2.) They brought suit against defendant in the Superior Court of Barrow County, alleging that defendant is liable for the wrongful death of Ms. Bentley due to its negligence. (Id. ¶ 11.) Defendant removed the case to this court [1-1] pursuant to 28 U.S.C. §§ 1332 and 1441.

In the complaint, plaintiffs assert that defendant was negligent in, among other things, "failing to install adequate signal equipment at the crossing." (Id. ¶ 10.) Defendant now moves for dismissal of this claim for failure to state a claim upon which relief can be granted.

## II.    Standard for Motion to Dismiss

A motion to dismiss for failure to state a claim should not be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The court "must take the complaint's allegations as true and read them in the light most favorable to the plaintiff[]." Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted). However, this court is not required to accept as true plaintiff's conclusions of law when considering a motion to dismiss but may make its own determinations of the legal issues. See Solis-Ramirez v. United States Dep't of Justice, 758 F.2d 1426, 1429 (11th Cir.

1985).  Consideration of matters beyond the complaint is improper.  See Milburn
v. United States, 734 F.2d 762, 765 (11th Cir. 1984).

### III.    Defendant's Motion to Dismiss

In 1973, the Georgia Code of Public Transportation ("GCPT") was enacted
"to revise, classify, consolidate, and repeal . . . other laws relating to all public
roads [and] bridges, . . . and to establish new laws relating thereto . . . ."  Kitchen
v. CSX Transp., Inc., 265 Ga. 206, 207 (1995) (citing Ga. L. 1973, p. 947; O.C.G.A.
§ 32-1-1 et seq.).  The purpose and legislative intent of GCPT is "to provide a
code of statutes for the public roads and other transportation facilities of the
state, the counties, and municipalities of Georgia . . . [and] to provide an
effective legal basis for the organization, administration, and operation of an
efficient, modern system of public roads and other modes of transportation."
O.C.G.A. § 32-1-2.

Georgia's common law provides generally that a railroad has the duty to
exercise reasonable and ordinary care at public crossings and that it is a question
for the jury as to whether and to what extent that duty required the railroad to
maintain additional traffic control devices at these crossings.  See Cent. of Ga.
Ry. v. Market, 200 Ga. App. 851, 854 (1991) (citing Isom v. Schettino, 129 Ga.
App. 73, 75 (1973)).  Under the GCPT, however, the duty to install adequate

3

warning devices and signals at railroad crossings lies with the governmental

body responsible for the road that crosses the railroad tracks.  O.C.G.A. § 32-6-

50.  The statute provides, in relevant part:

(a)  The department shall promulgate uniform regulations governing the erection and maintenance on the public roads of Georgia of signs, signals, markings, or other traffic-control devices, such uniform regulations to supplement and be consistent with the laws of this state. Insofar as practical, with due regard to the needs of the public roads of Georgia, such uniform regulations shall conform to the recommended regulations as approved by the American Association of State Highway and Transportation Officials.

(b)  In conformity with its uniform regulations, the department shall place and maintain, or cause to be placed and maintained, such traffic-control devices upon the public roads of the state highway system as it shall deem necessary to regulate, warn, or guide traffic, except that the department shall place and maintain a sign for each railroad crossing at grade on the state highway system, warning motorists of such crossing, provided that each railroad company shall also erect and maintain a railroad crossbuck sign on its right of way at every such crossing. The department may remove or direct removal of all traffic-control devices and signs which are erected on the state highway system by any governing authority without the permission of the department.

(c)  In conformity with the uniform regulations of the department: (1) Counties and municipalities shall place and maintain upon the public roads of their respective public road systems such traffic-control devices as are necessary to regulate, warn, or guide traffic except that counties and municipalities also shall erect and maintain a sign for each railroad crossing at grade on their respective county road or

4

> municipal street systems, warning motorists of such crossing. Furthermore, each railroad company shall erect and maintain a railroad crossbuck sign on its right of way at all such crossings. . . .

O.C.G.A. § 32-6-50(a)-(c).  Additionally, the GCPT provides:

> (a)    It shall be unlawful for any person to erect, place, or maintain within the right of way of any public road any sign, signal, or other device except as authorized by subsection (d) of this Code section or as required or authorized by Code Section 32-6-50 or any other law.

O.C.G.A. § 32-6-51(a).  Furthermore, the GCPT delegates the responsibility for installing protective devices on public roads to the governmental entity:

> Whenever, in the judgment of the department in respect to the state highway system, a county in respect to its county road system, or a municipality in respect to its municipal street system, such protection is reasonably necessary for the safety of the traveling public, the department or the county or the municipality may order the protection of a grade crossing by the installation of protective devices.

O.C.G.A. § 32-6-200.

Defendant argues that the GCPT places the exclusive authority to install traffic control devices at public railroad crossings with the governmental body responsible for the public road that crosses the railroad tracks.  Plaintiffs, however, claim that railroads still have a common law duty of care with respect to the installation of such traffic control devices.  To determine whether this

common law duty has been precluded by statute, the court must examine recent case law involving the GCPT.

This court previously addressed the question of whether O.C.G.A. §§ 32-6-50 and 32-6-51(a) abrogated the railroad company's common law duty to install traffic control and warning devices at grade crossings in CSX Transportation, Inc. v. Trism Specialized Carriers, Inc., 9 F. Supp. 2d 1374 (N.D. Ga. 1998). The court found that the GCPT superseded this state common law duty. 9 F. Supp. 2d at 1379. This court based its decision, in part, on the Georgia Supreme Court's decision in Kitchen. See id. at 1376, 1379.

In Kitchen, the Georgia Supreme Court held that, pursuant to O.C.G.A. § 32-6-197(b), the county had the exclusive duty to maintain the public road and any warning devices thereon leading to the abandoned bridge that ran over the railroad track. 265 Ga. at 208. The Supreme Court then stated in a footnote that its holding was "bolstered by O.C.G.A. §§ 32-6-50 and 32-6-51(a), which place the exclusive duty on the governmental body to install and maintain traffic control devices on public roads (including railroad crossings), and which statutorily prohibit private entities, including railroads, from placing traffic control devices on the public roads." Id. at 208, n. 6.

6

Following this court's ruling in Trism, the Georgia Court of Appeals addressed the railroad's common-law duty to install protective devices at grade crossings on public roads in Evans Timber Company, Inc. v. Central of Georgia Railroad Company, 239 Ga. App. 262 (1999). The Georgia Court of Appeals determined that the GCPT precludes such a common-law cause of action against a railroad company. Id.

The Georgia Supreme Court most recently addressed the GCPT and its effect on common law duties owed by private citizens in Fortner v. Town of Register, 278 Ga. 625 (2004). In this particular case, the court confronted the issue of whether the GCPT precluded a common law action against a landowner with regard to the placement or maintenance of any structure that obstructed a clear view from a public road. 278 Ga. at 625-26. The Supreme Court determined that O.C.G.A. § 32-6-51(b)[1] did not change the common law duty to prevent vegetation from obstructing vision at a railroad crossing. Id at 627.

_____

[1] O.C.G.A. § 32-6-51(b) states in relevant part:

It shall be unlawful for any person to erect, place, or maintain in a place or position visible from any public road any unauthorized sign, signal, device, or other structure which . . . (3) [o]bstructs a clear view from any public road to any other portion of such public road, to intersecting or adjoining public roads, or to property abutting such public road in such a manner as to constitute a hazard to traffic on such roads.

7

In <u>Fortner</u>, the Georgia Supreme Court also noted that its footnote in <u>Kitchen</u> regarding O.C.G.A. §§ 32-6-50 and 32-6-51 was dicta. <u>Id.</u> at 626 (citing 265 Ga. at 208, n. 6).  The court also noted that the Georgia Court of Appeals relied to some extent on the <u>Kitchens</u> dicta in its opinion in <u>Evans Timber</u>.  <u>Id.</u> (citing 239 Ga. App. at 263-64).  Thus, the Supreme Court stated that "[t]o the extent that the holding of <u>Evans Timber</u> is based on that dicta, it is overruled." <u>Id.</u> at 626.

Plaintiffs now argue that under <u>Fortner</u> railroads still have a common law duty of care with respect to the installation of protective devices at railroad crossings.  Plaintiffs argue that the holding in <u>Evans Timber</u> that O.C.G.A. § 32-6-200 preempts the common law duty of railroads to install such devices has been overruled by <u>Fortner</u>.  The Georgia Supreme Court, however, overruled <u>Evans Timber</u> only "[t]o the extent that the holding . . . is based on . . . dicta [from the <u>Kitchens</u> footnote.]" 278 Ga. at 626 (emphasis added).  Thus, this court must determine to what extent the Court of Appeals' decision in <u>Evans Timber</u> was based on this dicta.

In <u>Evans Timber</u>, although the Court of Appeals noted that the <u>Kitchens</u> decision "provide[d] insightful guidance," the court based its opinion on the

express language of the statute, trial testimony,[2] and the legislative intent behind the enactment of the GCPT.[3] 239 Ga. App. at 264-67.  As <u>Fortner</u> overruled only the rationale of <u>Evans Timber</u> that relied upon the <u>Kitchens</u> dicta, <u>Fortner</u> did not overrule the underlying holding in <u>Evans Timber</u>: that the common law duty of railroads to initiate and authorize the installation of protective devices at grade crossings on public roads has been preempted by O.C.G.A. § 32-6-200.

Moreover, the <u>Fortner</u> court did not reject the assertion that the GCPT makes it unlawful for a private entity to install traffic control devices on the public roadway.  Rather, the Georgia Supreme Court contemplated whether a railroad company had a duty to initiate the installation of protective devices at grade crossings as opposed to a duty to actually install such devices without governmental authority.  278 Ga. at 626-27.  The Georgia Supreme Court's discussion with respect to these duties, however, is dicta.  The underlying issue in the case at hand, the duty to install protective devices at grade crossings on public roads, was not at issue in <u>Fortner</u>.  <u>See</u> 278 Ga. 625 (addressing whether

_____

[2] "The testimony at trial showed that a railroad could not unilaterally install a protective device on a public road.  Instead, the appropriate governmental entities first had to order and approve the device." <u>Evans Timber</u>, 239 Ga. App. at 265.

[3] "[T]he comprehensive and pervasive legislation of the GCPT demonstrates the General Assembly's intent to preempt the common law duty of the railroad to install protective devices at public grade crossings." <u>Id.</u> at 267.

the GCPT precluded a common law action for failure to keep railroad right-of-way free of visual obstructions).  Therefore, to the extent that <u>Fortner</u> addresses this duty and the preemption thereof under the GCPT, such language is merely dicta upon which this court cannot confidently rely.

After reviewing the case law and statutory construction, this court concludes that the common law duty for a railroad company to initiate the installation of protective devices at grade crossings on public roads has been abrogated by the GCPT.  Under the plain language of O.C.G.A. § 32-6-51, the railroad company acts in violation of Georgia law if it erects traffic signals on a public road unless it is required or authorized to do so by O.C.G.A. § 32-6-51(d), O.C.G.A. § 32-6-50, or some "other law."  Furthermore, the GCPT delegates responsibility for the installation of protective devices on public roads to the appropriate governmental entity.  O.C.G.A. § 32-6-200.

The court also notes that neither the <u>Trism</u> rationale nor the case's holding have been overruled by the <u>Fortner</u> decision.[4]  Furthermore, any discussion of O.C.G.A. §§ 32-6-50, 32-6-51(a), or 32-6-200 by the Georgia Supreme Court in <u>Fortner</u> is dicta.  Therefore, this court concludes that the law remains that the

_____

[4] The Eleventh Circuit Court of Appeals affirmed this court's decision in <u>Trism</u>.  <u>CSX Transp., Inc. v. Trism Specialized Carriers, Inc.</u>, 182 F.3d 788 (11th Cir. 1999).

10

GCPT precludes a claim against a railraod for failure to install protective devices at grade crossings on public roads.  Thus, plaintiffs' claim against defendant for negligence in "failing to install adequate signal equipment at the crossing" fails as a matter of law.  (Compl. ¶ 10(b).)  Accordingly, defendant's motion to dismiss this claim under Rule 12(b)(6) is hereby **GRANTED**.

### IV.    Conclusion

Based on the foregoing, defendant's motion to dismiss plaintiffs' negligence claim for failure to install adequate signal equipment at the crossing is hereby [10-1] **GRANTED**.

IT IS SO ORDERED, this 26th day of June, 2006.

s/ *William C. O'Kelley*

WILLIAM C. O'KELLEY
Senior United States District Judge

11